JEAN C. WILCOX, ESQ. (SBN 097963)
Email address: jeanw@hhlawgroup.com
CLAUDIA MOURAD, ESQ. (SBN 211139)
Email address: claudiam@hhlawgroup.com
LORI C. HERSHORIN, ESQ. (SBN 155977)
Email address: loric@hhlawgroup.com
HERSHORIN & HENRY, LLP
27422 Portola Parkway, Suite 360
Foothill Ranch, California 92610
Telephone: (949) 859-5600
Facsimile: (949) 859-5680

FILED
2010 JUN 15 PM 3:37
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

Attorneys for Plaintiff, FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings & Loan Association, F.A.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings and Loan Association, F.A.,

Plaintiff,

vs.

LAMARSH FINANCIAL INC., a Nevada corporation; ZENY P. LAMARSH, an individual; SAM DAVID, an individual; STEVEN DE LA HOYA, an individual; BENIS LAZAR, an individual; LINDA MATE, an individual; ERIC WEXELMAN, an individual; BRISA ARENAS, an individual; ANTONIO DE LA HOYA, an individual; BRITTEN KIMBELL, an individual, CHRIS WELLS, an individual, YACOU LAZAR, an individual; RASHEL SARALAN, an individual, and RESHEM SINGH, an individual;

Defendants.

CASE NO.: **SACV10-00872 DOC (RNBX)**

*Exempt from Filing Fees 18 U.S.C. § 3006A*

COMPLAINT FOR DAMAGES FOR:

1. BREACH OF WRITTEN CONTRACT
2. BREACH OF WRITTEN CONTRACT
3. BREACH OF WRITTEN CONTRACT
4. PROFESSIONAL NEGLIGENCE
5. BREACH OF FIDUCIARY DUTY
6. NEGLIGENT MISREPRESENTATION
7. FRAUD
8. UNJUST ENRICHMENT

**DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings & Loan Association, F.A. ("FDIC" or "Plaintiff") and alleges as follows:

## JURISDICTION & VENUE

1. This district court has jurisdiction over this action pursuant to 12 USC § 1819(b)(2)(A) and 28 USC § 1345 because the district courts have original jurisdiction over civil actions in which the FDIC is a party, which actions are deemed to arise under the laws of the United States.

2. This district court is the proper venue for this action pursuant to 28 USC § 1391(b)(2), because this is a civil action not founded solely on diversity of citizenship and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## THE PARTIES

3. The FDIC is a federal entity that is organized under the laws of the United States of America and has the power to sue and be sued in any court of law or equity, State or Federal, pursuant to 12 USC § 1819(a). On November 21, 2008, the FDIC was appointed receiver for Downey Savings and Loan Association, F.A. ("Downey") and thereupon succeeded to each of the claims hereafter alleged.

4. At all times herein alleged, Downey maintained its principal business offices in Orange County, California.

5. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein defendant LAMARSH FINANCIAL INC. ("Lamarsh Financial") was a Nevada corporation in good standing and licensed by the California Department of Real Estate ("DRE") to conduct business as a mortgage broker. At all relevant times, Lamarsh Financial held itself out as having particular expertise in mortgage brokering and as employing brokers and salespersons that had met the respective requirements established by the DRE for a broker and/or salesperson.

6. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that defendant ZENY P. LAMARSH ("Z. Lamarsh") was licensed by the DRE as a broker, and that Lamarsh Financial used Z. Lamarsh's broker's license to conduct its business as a mortgage broker for the transactions alleged herein. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that Z. Lamarsh was a shareholder of Lamarsh Financial, and that Z. Lamarsh acted as an employee and/or agent of Lamarsh Financial.

7. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein defendant Z. Lamarsh was a majority shareholder of Lamarsh Financial. Plaintiff is informed and believes, and thereon alleges, that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendant Z. Lamarsh, on the one hand, and Lamarsh Financial, on the other hand, such that any individuality and separateness between Z. Lamarsh and Lamarsh Financial have ceased, and Z. Lamarsh is the alter ego of defendant Lamarsh Financial, and vice-versa.

8. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Z. Lamarsh exercised complete dominance and control over Lamarsh Financial; Lamarsh Financial was so inadequately capitalized that compared with the business done by Lamarsh Financial and the risks of loss, its capitalization was illusory; Lamarsh Financial was conceived, intended and used by Z. Lamarsh to avoid individual liability; Z. Lamarsh used assets of Lamarsh Financial for his personal use and commingled his personal assets with Lamarsh Financial's assets; and Lamarsh Financial failed to observe corporate formalities.

9. Adherence to the fiction of the separate existence of Lamarsh Financial as an entity distinct from Z. Lamarsh would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

10. Plaintiff is informed and believes and thereon alleges that at all relevant

times alleged herein defendants SAM DAVID ("David"), STEVEN DE LA HOYA (S. Del La Hoya"), BENIS LAZAR ("B. Lazar"), LINDA MATE ("Mate") and ERIC WEXELMAN ("Wexelman") (collectively "Loan Officers"), were licensed by the DRE as a salesperson (except for Lazar who is licensed as a broker), were loan officers of Lamarsh Financial and employees or agents of Z. Lamarsh and Lamarsh Financial.

11. Prior to and at the time of the loans herein described, Lamarsh Financial entered into a written contract with Downey under the terms of which Lamarsh Financial was permitted to submit to Downey mortgage loan applications and supporting documentation, including appraisals, for Downey's review and approval. On or about December 15, 2005, Lamarsh Financial and Downey entered into a "Wholesale Loan Brokerage Agreement" ("Brokerage Agreement"), which by its terms superseded all prior or contemporaneous agreements, whether written or oral, between said parties. A true and correct copy of the Brokerage Agreement is attached to this complaint, marked as **Exhibit 1** and incorporated in full by this reference.

12. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that defendants BRISA ARENAS ("Arenas"), ANTONIO DE LA HOYA ("A. Del La Hoya"), BRITTEN KIMBELL ("Kimbell"), CHRIS WELLS ("Wells"), YACOU LAZAR ("Lazar") and RASHEL SARALAN ("Saralan"), are all borrowers (collectively referred herein as the "Borrowers") of Downey, and residents of the State of California.

13. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that RESHEM SINGH ("Singh") was licensed by the DRE as a residential appraiser and was an approved appraiser used by Downey. Singh appraised the real property for the loan defendant Rashel Saralan obtained from Downey.

///

# GENERAL ALLEGATIONS

## ARENAS LOAN

14. On or about February 14, 2006, pursuant to a written loan application submitted to Downey by Arenas, Lamarsh Financial, Z. Lamarsh and Mate, Downey made a refinance loan to Arenas in the amount of $318,000.00 ("Arenas Loan") that was secured by a first lien deed of trust recorded against the real property commonly known as 5913 Webb Court, Riverbank, California 95367 ("Arenas Property"). Arenas was the record title owner of the Arenas Property at that time.

15. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Arenas, Lamarsh Financial, Z. Lamarsh and Mate compiled, prepared and submitted to Downey a written loan application ("Arenas Loan Application") wherein said defendants stated that Arenas earned a certain monthly income, and stated her employment information. Arenas stated she was employed as a loan officer for three years at a mortgage company in her loan application. In submitting the Arenas Loan Application to Downey on the Arenas Loan, Arenas, Lamarsh Financial, Z. Lamarsh and Mate certified and represented to Downey in writing that the information contained therein was true, correct, currently valid and genuine. Further, Lamarsh Financial, Z. Lamarsh and Mate jointly certified and represented to Downey that said defendants had undertaken a reasonable investigation by which they determined that the financial information contained in Arenas Loan Application was true, correct, currently valid and genuine. Downey reasonably relied on said information in its determination to approve the Arenas Loan.

16. Based upon the income, employment, assets and debt information submitted to it by Arenas, Lamarsh Financial, Z. Lamarsh and Mate, Downey determined that Arenas had the ability to repay the Arenas Loan according to its terms and conditions.

17. On or about February 14, 2006, in reliance upon the Arenas Loan

Application submitted by the aforesaid defendants to Downey, Downey agreed to and did fund the Arenas Loan and in connection with said funding a Deed of Trust naming Downey as beneficiary thereunder was recorded on the Arenas Property.

18. On or about July 10, 2008, Arenas defaulted on the payments that were then due from her on the Arenas Loan.

19. Plaintiff is informed and believes and thereon alleges that Arenas's 2006 Tax Return, obtained sometime after the default, reflected that the Arenas Loan Application that the defendants had submitted to Downey grossly misrepresented Arenas's income and that Arenas did not earn the income that was stated in the Arenas Loan Application.

20. Downey was not aware of the material misrepresentations in the Arenas Loan Application whereby the income was overstated until it obtained Arenas's 2006 Tax Return after Arenas defaulted on the Arenas Loan. Downey did not have access to said tax return until after default had occurred on the Arenas Loan. Downey had no reason to verify the information in the Arenas Loan Application, until after default had occurred, because Lamarsh Financial agreed in the Brokerage Agreement that it had undertaken a reasonable investigation by which it determined that the financial information contained in Arenas Loan Application was true, correct, currently valid and genuine. Lamarsh Financial knew Downey would use and rely upon the Arenas Loan Application in its determination of whether to approve and fund the Arenas Loan. Further, Downey did not suffer any damages with respect to the Arenas Loan until after default on said loan had occurred.

21. Plaintiff is informed and believes, and thereon alleges, that Downey subsequently foreclosed by trustee's sale on the deed of trust that secured the Arenas Loan and which was recorded against the Arenas Property. At said foreclosure sale, the Arenas Property reverted to Downey and resulted in a loss to Downey of $224,000.00, or according to proof at trial.

## A. DE LA HOYA LOAN

22. On or about October 31, 2005, pursuant to a written loan application submitted to Downey by A. De La Hoya, Lamarsh Financial, Z. Lamarsh and S. De La Hoya, Downey made a refinance loan to A. De La Hoya in the amount of $582,000.00 ("A. De La Hoya Loan") that was secured by a first lien deed of trust on real property A. De La Hoya then owned and that is commonly known as 2398 Marigold Way, Antioch, California 94531 ("A. De La Hoya Property"). A. De La Hoya was the record title owner of the A. De La Hoya Property at that time.

23. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that A. De La Hoya, Lamarsh Financial, Z. Lamarsh and S. De La Hoya compiled, prepared and submitted to Downey a written loan application ("A. De La Hoya Loan Application") wherein said defendants stated that A. De La Hoya earned a certain monthly income, had certain identified debts and assets, and stated his employment information.

24. In submitting the A. De La Hoya Loan Application to Downey on the A. De La Hoya Loan, Lamarsh Financial, Z. Lamarsh and S. De La Hoya each jointly certified and represented to Downey in writing that the information contained therein was true, correct, currently valid and genuine. Further, Lamarsh Financial, Z. Lamarsh and S. De La Hoya jointly certified and represented to Downey in writing that they had undertaken a reasonable investigation by which they determined that the financial information contained in A. De La Hoya Loan Application was true, correct, currently valid and genuine. Downey reasonably relied on said information in its determination to approve the A. De La Hoya Loan.

25. Based upon the income, employment, assets and debt information submitted to Downey, Downey determined that A. De La Hoya had the ability to repay the A. De La Hoya Loan.

26. On or about October 31, 2005, in reliance upon the A. De La Hoya Loan

Application, Downey agreed to and did fund the A. De La Hoya Loan and, in connection with said funding, a Deed of Trust naming Downey as beneficiary thereunder was recorded on the A. De La Hoya Property.

27. On or about November 30, 2007, A. De La Hoya defaulted on the payments that were then due from them on the A. De La Hoya Loan.

28. Plaintiff is informed and believes and thereon alleges that A. De La Hoya's 2006 Tax Return, obtained sometime after the default, reflected that the A. De La Hoya Loan Application that the defendants had submitted to Downey grossly misrepresented A. De La Hoya's income and that A. De La Hoya did not earn the income that was stated in the A. De La Hoya Loan Application. Further, A. De La Hoya stated he was self employed for a company on his loan application; however, Plaintiff is now informed and believes and alleges thereon that the company was owned by the loan officer, S. De La Hoya, who is a possible relative of A. De La Hoya and that A. De La Hoya did not receive compensation from said company. Further, the letter A. De La Hoya provided for the verification of his self-employment contained material false information.

29. Downey was not aware of the material misrepresentations in A. De La Hoya Loan Application until it obtained A. De La Hoya's 2006 Tax Return after A. De La Hoya defaulted on the A. De La Hoya Loan. Downey did not have access to said tax return until after default had occurred on the A. De La Hoya Loan. Downey had no reason to verify the information in the A. De La Hoya Loan Application, until after default had occurred, because Lamarsh Financial agreed in the Brokerage Agreement that it had undertaken a reasonable investigation by which it determined that the financial information contained in A. De La Hoya Loan Application was true, correct, currently valid and genuine. Lamarsh Financial knew Downey would use and rely upon the A. De La Hoya Loan Application in its determination of whether to approve and fund the A. De La Hoya Loan. Further, Downey did not suffer any

damages with respect to the A. De La Hoya Loan until after default on said loan had occurred.

30. Plaintiff is informed and believes, and thereon alleges, that Downey subsequently foreclosed by trustee's sale on the deed of trust that secured the A. De La Hoya Loan and which was recorded against the A. De La Hoya Property. At said foreclosure sale, the A. De La Hoya Property reverted to Downey and resulted in a loss to Downey of $426,000.00, or according to proof at trial.

KIMBELL/WELLS LOAN

31. On or about January 19, 2006, pursuant to a written loan application submitted to Downey by Kimbell/Wells, Lamarsh Financial, Z. Lamarsh and Wexelman, Downey made a refinance loan to Kimbell/Wells in the amount of $436,000.00 ("Kimbell/Wells Loan") that was secured by a first lien deed of trust on real property Kimbell/Wells then owed and that is commonly known as 6823 Mokelumne Avenue, Oakland, California ("Kimbell/Wells Property"). Kimbell/Wells were the record title owner of the Kimbell/Wells Property at that time.

32. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that Kimbell/Wells, Lamarsh Financial, Z. Lamarsh and Wexelman compiled, prepared and submitted to Downey a written loan application ("Kimbell/Wells Loan Application") wherein said defendants stated that Wells earned a certain monthly income, and that Kimbell/Wells each had certain identified debts and assets. In submitting the Kimbell/Wells Loan Application to Downey on the Kimbell/Wells Loan, Lamarsh Financial, Z. Lamarsh and Wexelman each jointly certified and represented to Downey in writing that the information contained therein was true, correct, currently valid and genuine. Further, Lamarsh Financial, Z. Lamarsh and Wexelman jointly certified and represented to Downey in writing that they had undertaken a reasonable investigation by which they determined that the financial information contained in Kimbell/Wells Loan Application was true, correct,

currently valid and genuine. Downey reasonably relied on said information in its determination to approve the Kimbell/Wells Loan Application.

33. Based upon the income, assets and debt information submitted to Downey, Downey determined that Kimbell/Wells had the ability to repay the Kimbell/Wells Loan.

34. On or about January 19, 2006, in reliance upon the Kimbell/Wells Loan Application, Downey agreed to and did fund the Kimbell/Wells Loan and, in connection with said funding, a Deed of Trust naming Downey as beneficiary thereunder was recorded on the Kimbell/Wells Property.

35. On or about January 22, 2008, Kimbell/Wells defaulted on the payments that were then due from them on the Kimbell/Wells Loan.

36. Plaintiff is informed and believes and thereon alleges that, sometime after default, it was discovered that Wells was an employee of a company owed by the loan officer, Wexelman, an affiliated business of Lamarsh Financial, and that Wells overstated his income. It was also discovered after the default occurred that Kimbell had purchased two other properties encumbered by loans. Kimbell failed to inform Downey of said liabilities, which were recorded about two days prior to the Kimbell/Wells Loan Application. These loans would make Kimbell's debt too high to qualify for the Kimbell/Wells Loan, and Kimbell would have not been approved for Kimbell/Wells Loan had all of her liabilities been accurately disclosed.

37. Downey was not aware of the material misrepresentations in the Kimbell/Wells Loan Application until after the default occurred on the Kimbell/Wells Loan. Downey had no reason to verify the information in the Kimbell/Wells Loan Application, until after default had occurred, because Lamarsh Financial agreed in the Brokerage Agreement that it had undertaken a reasonable investigation by which it determined that the financial information contained in Kimbell/Wells Loan Application was true, correct, currently valid and genuine. Lamarsh Financial knew

Downey would use and rely upon the Kimbell/Wells Loan Application in its determination of whether to approve and fund the Kimbell/Wells Loan. Further, Downey did not suffer any damages with respect to the Kimbell/Wells Loan until after default on said loan had occurred.

38. Plaintiff is informed and believes, and thereon alleges, that Downey subsequently foreclosed by trustee's sale on the deed of trust that secured the Kimbell/Wells Loan and which was recorded against the Kimbell/Wells Property. At said foreclosure sale, the Kimbell/Wells Property reverted to Downey and resulted in a loss to Downey of $301,000.00, or according to proof at trial.

LAZAR LOAN

39. On or about January 18, 2006, pursuant to a written loan application submitted to Downey by Lazar, Lamarsh Financial, Z. Lamarsh, and B. Lazar, Downey made a refinance loan to Lazar in the amount of $448,000.00 ("Lazar Loan") that was secured by a first lien deed of trust recorded against the real property commonly known as 2708 Temescal Drive, Modesto, California ("Lazar Property"). Lazar was the record title owner of the Lazar Property at that time.

40. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that Lazar, Lamarsh Financial, Z. Lamarsh, and B. Lazar compiled, prepared and submitted to Downey a written loan application ("Lazar Loan Application") wherein said defendants stated that Lazar earned a certain monthly income and had certain identified debts and assets, and stated his employment information. In submitting the Lazar Loan Application to Downey on the Lazar Loan, Lazar, Lamarsh Financial, Z. Lamarsh and B. Lazar certified and represented to Downey in writing that the information contained therein was true, correct, currently valid and genuine. Further, Lamarsh Financial, Z. Lamarsh and B. Lazar jointly certified and represented to Downey that said defendants had undertaken a reasonable investigation by which they determined that the financial information contained in

Lazar Loan Application was true, correct, currently valid and genuine. Downey reasonably relied on said information in its determination to approve the Lazar Loan Application.

41. Based upon the income, employment, assets and debt information submitted to it by Lazar, Lamarsh Financial, Z. Lamarsh and B. Lazar, Downey determined that Lazar had the ability to repay the Lazar Loan according to its terms and conditions.

42. On or about January 18, 2006, in reliance upon the Lazar Loan Application submitted by the aforesaid defendants to Downey, Downey agreed to and did fund the Lazar Loan and in connection with said funding a Deed of Trust naming Downey as beneficiary thereunder was recorded on the Lazar Property.

43. On or about June 16, 2008, Lazar defaulted on the payments that were then due from him on the Lazar Loan.

44. Plaintiff is informed and believes and thereon alleges that Lazar's 2005 and 2006 Tax Returns, obtained sometime after the default, reflected that the Lazar Loan Application that the defendants had submitted to Downey grossly misrepresented Lazar's income and that Lazar did not earn the income that was stated in the Lazar Loan Application. This information was not discovered by Plaintiff until after default. Lazar would not have qualified for the Lazar Loan had he stated the correct income on the Lazar Loan Application. Moreover, sometime after the default, it was discovered that Lazar had an undisclosed lien on the Lazar Property that was recorded less than a month after funding of the Lazar Loan. Plaintiff is informed and believes and thereon alleges that B. Lazar, the loan officer, is a possible relative of Lazar.

45. Downey was not aware of the material misrepresentations in the Lazar Loan Application until it obtained Lazar's 2005 and 2006 Tax Returns after Lazar defaulted on the Lazar Loan. Downey did not have access to said tax returns until

after default had occurred on the Lazar Loan. Downey had no reason to verify the information in the Lazar Loan Application, until after default had occurred, because Lamarsh Financial agreed in the Brokerage Agreement that it had undertaken a reasonable investigation by which it determined that the financial information contained in Lazar Loan Application was true, correct, currently valid and genuine. Lamarsh Financial knew Downey would use and rely upon the Lazar Loan Application in its determination of whether to approve and fund the Lazar Loan. Further, Downey did not suffer any damages with respect to the Lazar Loan until after default on said loan had occurred.

46. Plaintiff is informed and believes, and thereon alleges, that Downey subsequently foreclosed by trustee's sale on the deed of trust that secured the Lazar Loan and which was recorded against the Lazar Property. At said foreclosure sale, the Lazar Property reverted to Downey and resulted in a loss to Downey of $239,000.00, or according to proof at trial.

SARALAN LOAN

47. On or about January 30, 2006, pursuant to a written loan application submitted to Downey by Saralan, Lamarsh Financial, Z. Lamarsh and David, Downey made a refinance loan to Saralan in the amount of $396,000.00 ("Saralan Loan") that was secured by a first lien deed of trust on real property Saralan then owned and that is commonly known as 2726 Donner Trail, Riverbank, California ("Saralan Property"). Saralan was the record title owner of the Saralan Property at that time.

48. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that Saralan, Lamarsh Financial, Z. Lamarsh and David compiled, prepared and submitted to Downey a written loan application ("Saralan Loan Application") wherein said defendants stated that Saralan earned a certain monthly income, and had certain identified debts and assets. In submitting the Saralan Loan Application to Downey on the Saralan Loan, Lamarsh Financial, Z. Lamarsh

and David each jointly certified and represented to Downey in writing that the information contained therein was true, correct, currently valid and genuine. Further, Lamarsh Financial, Z. Lamarsh and David jointly certified and represented to Downey in writing that they had undertaken a reasonable investigation by which they determined that the financial information contained in Saralan Loan Application was true, correct, currently valid and genuine. Downey reasonably relied on said information in its determination to approve the Saralan Loan Application.

49. Plaintiff is informed and believes and thereon alleges that on or about January 12, 2005, Singh caused to be prepared and submitted to Downey through Lamarsh Financial an appraisal wherein said defendant opined that the Saralan Property had a then market value of $495,000.00 ("Saralan Appraisal").

50. In making the appraisal on the Saralan Property, Singh represented to Downey that he had arrived at his opinion of the Saralan Property's then market value by using the Uniform Standards of Professional Appraisal Practice ("USPAP") and, further, that the appraisal conformed to the standards and requirements imposed by law on appraisers licensed by the State of California. At all relevant times herein, Singh was statutorily required to comply with USPAP pursuant to Cal. Bus. & Prof. Code § 11319 and 10 C.C.R. § 3701. Lamarsh Financial and Singh knew Downey would use and rely upon the appraisal in its determination of whether to approve and fund the Saralan Loan.

51. Based upon the income, assets and debt information submitted to Downey, Downey determined that Saralan had had the ability to repay the Saralan Loan and that the Saralan Property could adequately secure the Saralan Loan.

52. On or about January 30, 2006, in reliance upon the Saralan Loan Application and Singh's appraisal of the Saralan Property that was submitted to Downey, Downey agreed to and did fund the Saralan Loan and, in connection with said funding, a Deed of Trust naming Downey as beneficiary thereunder was recorded

on the Saralan Property.

53. On or about July 5, 2008, Saralan defaulted on the payments that were then due from Saralan on the Saralan Loan.

54. Plaintiff is informed and believes and thereon alleges that, sometime after default, it was discovered that Saralan overstated the income on the Saralan Loan Application, and the appraisal had an inflated value of the Saralan Property.

55. Downey was not aware of the material misrepresentations in the Saralan Loan Application and the Saralan Appraisal, until after Saralan defaulted on the Saralan Loan. Downey had no reason to verify the information in the Saralan Loan Application, until after default had occurred, because Lamarsh Financial agreed in the Brokerage Agreement that it had undertaken a reasonable investigation by which it determined that the financial information contained in Saralan Loan Application was true, correct, currently valid and genuine. Lamarsh Financial knew Downey would use and rely upon the Saralan Loan Application and the Saralan Appraisal in its determination of whether to approve and fund the Saralan Loan. Further, Downey did not suffer any damages with respect to the Saralan Loan until after default on said loan had occurred.

56. Plaintiff is informed and believes, and thereon alleges, that Downey subsequently foreclosed by trustee's sale on the deed of trust that secured the Saralan Loan and which was recorded against the Saralan Property. At said foreclosure sale, the Saralan Property reverted to Downey and resulted in a loss to Downey of $288,000.00, or according to proof at trial.

**COUNT ONE**

**(BREACH OF WRITTEN CONTRACT –**

**Against Brokers Lamarsh Financial and Z. Lamarsh)**

57. Plaintiff incorporates by this reference paragraphs 1 through 56 hereinabove as though fully set forth hereat.

58. Pursuant to the Brokerage Agreement, Lamarsh Financial agreed to submit to Downey at their sole cost and expense, loan applications on which Lamarsh Financial had undertaken a reasonable investigation and had determined the information contained therein was true, correct, currently valid and genuine, including all signatures thereon. Pursuant to the Brokerage Agreement, Lamarsh Financial warranted and represented that, with regard to Lamarsh Financial's activities in general and the loan applications in particular, Lamarsh Financial complied with all applicable laws and regulations. By virtue of their employment, independent contractor, and/or agency relationship with Lamarsh Financial, Lamarsh Financial's brokers and loan officers, including but not limited to Z. Lamarsh, were bound by these provisions in the Brokerage Agreement.

59. In addition, pursuant to the Brokerage Agreement, Lamarsh Financial agreed to supply to Downey at their sole cost and expense an appraisal on the collateral for the proposed loan that Lamarsh Financial procured from appraisers on the list of approved appraisers Downey maintained, and that the appraisal would comply with USPAP and all appraisal standards and requirements imposed by law.

60. Lamarsh Financial further agreed in the Brokerage Agreement that it would indemnify Downey and hold Downey harmless from any loss, cost, claim, action or damage, including reasonable and necessary attorney's fees and related costs that arose out of or were related to Lamarsh Financial's acts or omissions under the Brokerage Agreement.

61. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey fully performed all of its duties under the Brokerage Agreement.

62. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein that Lamarsh Financial and Z. Lamarsh breached the Brokerage Agreement with Downey by, *inter alia*, (i) failing to conduct a reasonable

investigation into the financial information set forth in the loan applications of Arenas, A. De La Hoya, Kimbell/Wells, Lazar and Saralan, such that the information therein was not true, correct, currently valid and genuine; and (ii) by supporting the Saralan Loan Application with an appraisal that did not comply with USPAP and other appraisal standards and requirements imposed by law.

63. Implied in the Brokerage Agreement was the covenant of good faith and fair dealing that each party would not frustrate the other party's rights to the benefits of the contract. Lamarsh Financial and Z. Lamarsh breached the implied covenant of good faith and fair dealing by submitting the Borrowers' respective loans applications and the appraisals on the Saralan Property to Downey knowing the borrowers had no intention to pay off the loan, were financially unable to pay their loans and/or did not have the income to qualify for the loan.

64. As a direct and proximate result of the breach of the Brokerage Agreement by Lamarsh Financial and Z. Lamarsh, Plaintiff as Downey's Receiver has been damaged in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law.

65. As a further direct and proximate result of the breach of the Brokerage Agreement by Lamarsh Financial and Z. Lamarsh, and each of them, Plaintiff has and will continue to incur reasonable and necessary attorney fees and related costs in connection with this action, as additional damages caused by Lamarsh Financial's and Z. Lamarsh's breach of the Brokerage Agreement, in an amount not yet known, but which will be proven by Plaintiff at time of trial.

///

///

**COUNT TWO**

**(BREACH OF WRITTEN CONTRACT—**

**As Against Appraiser Singh)**

66. Plaintiff incorporates by this reference paragraphs 1 through 56 above as though fully set forth hereat.

67. Prior to the appraisal of the Saralan Property, Singh applied to be on Downey's list of approved appraisers ("Panel of Approved Fee Appraisers"). Plaintiff is informed and believes and alleges that in August 2004, Singh and Downey entered into a written agreement whereby Singh would be appointed to Downey's Panel of Approved Fee Appraisers to perform real estate appraisal services for Downey and brokers who submitted loan applications to Downey as an independent contractor or consultant ("Downey Appraiser Contract"). As part of the Downey Appraiser Contract, Singh agreed to prepare all appraisals in accordance with Federal Home Loan Mortgage Corporation ("FHLMC")/ Federal National Mortgage Association ("FNMA") appraisal guidelines, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), USPAP and Downey's written appraisal guidelines.

68. Plaintiff is informed and believes and thereon alleges, that once Singh entered into the Downey Appraiser Contract and was placed on the Panel of Approved Fee Appraisers, he added Downey as a Certificate Holder under his E&O policy of insurance. Singh knew that brokers, on Downey's behalf, would then be permitted to seek appraisals from Singh. Singh also knew that Downey, as a federally insured lender, would rely on his appraisals. The Saralan Appraisal states that the intended use of the appraisal report is for the lender/client to evaluate the property that is the subject of the appraisal for a mortgage finance transaction. Downey was the lender for which the appraisal was prepared.

69. Plaintiff is informed and believes and thereon alleges, that Downey was

the intended third party beneficiary of the contract for services that was entered into between Lamarsh Financial and Singh, pursuant to which Singh prepared and submitted to Downey a written appraisal on the Saralan Property into which the terms of their contract was set forth ("Appraisal Agreement"). A true and correct copy of the Appraisal Agreement is attached hereto, marked as **Exhibit 2**, and incorporated in full by this reference.

70. Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the Appraisal Agreement, Singh expressly agreed to follow all applicable standards, including without limitation, USPAP; and Singh represented that his appraisal conformed to the standards and requirements imposed by law on appraisers licensed by the State of California.

71. Plaintiff is informed and believes and thereon alleges that Singh breached his Appraisal Agreement and the Downey Appraiser Contract, and the duties he assumed thereunder to Downey by, *inter alia*: (i) providing an appraisal that did not conform to USPAP or all applicable standards and requirements imposed by law, including but not limited to USPAP Rules 1-1 and 1-2; (ii) providing an appraisal that failed to properly evaluate comparable properties; and (iii) misrepresenting data concerning the value of the Saralan Property such that the appraisal report was inaccurate. Thus, Singh inflated the market values of the Saralan Property that was to secure repayment of the Saralan Loan, and Downey relied on such report, to its detriment, in approving and funding said loan.

72. Implied in the Appraisal Agreement and the Downey Appraiser Contract was the covenant of good faith and fair dealing that each party would not frustrate the other party's rights to the benefits of the contract. Singh breached the implied covenant of good faith and fair dealing by submitting the Saralan Appraisal to Downey through Lamarsh Financial knowing the fair market value of the properties were less than what was stated in said appraisals and that he had not followed all

applicable standards, including without limitation, USPAP.

73. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey fully performed all of its duties, if any it owed, to Singh under the Downey Appraiser Contract. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged Lamarsh Financial fully performed all of its duties, if any it owed, to Singh under the Appraisal Agreement.

74. As a direct and proximate result of the breach of the Appraisal Agreement and the Downey Appraiser Contract by Singh, Plaintiff as Downey's Receiver has been damaged in the amount of $288,000.00 on the Saralan Property, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law.

**COUNT THREE**

**(BREACH OF WRITTEN CONTRACT—**

**As Against the Borrowers)**

75. Plaintiff incorporates by this reference paragraphs 1 through 56 above as though fully set forth here at.

76. Each of the Borrowers entered into their respective written loan applications with Downey, in which each borrower promised, represented and agreed that the information provided therein was true and correct as of the date each borrower signed their respective loan applications.

77. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey fully performed all of its duties to the Borrowers under their respective loan agreements.

78. Plaintiff is informed and believes and thereon alleges, that the Borrowers breached their duties under the Loan Applications by providing to Downey information in support of their Loan Applications which was not true or correct as of the date the Borrowers each signed their respective Loan Application. Downey did

not discover or learn of the Borrowers' breach of their contracts until after the Borrowers had defaulted on their respective loans with Downey, on which date Downey first sustained damages proximately caused by the Borrowers' breach.

79. As a direct and proximate result of the breach of the Borrowers respective breach of their loan application, Plaintiff as Downey's Receiver has been damaged in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan$434,000.00 on the Arenas Loan, $326,000.00 on the A. De La Hoya Loan, $117,000.00 on the Kimbell/Wells Loan, $316,000.00 on the Lazar Loan, and $294,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law.

**COUNT FOUR**

**(PROFESSIONAL NEGLIGENCE—**

**As Against Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh)**

80. Plaintiff incorporates by reference paragraphs 1 through 56 above as though fully set forth hereat.

81. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh were licensed professionals who owed a duty of care to Downey in submitting loan applications and appraisals, on which said professionals intended for Downey to rely. Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh owed Downey a duty to use reasonable care, skill and diligence in submitting the information contained in the loan applications and the appraisal to Downey. Further, at all relevant times alleged herein, Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David

and Singh were each bound by the standards of care set forth by law and imposed upon them as licensees of the DRE.

82. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh each breached their respective professional duties, including statutory duties, by submitting to Downey false, inaccurate, incomplete and/or misleading information in the Borrowers' respective loan applications and the appraisal for the Saralan Property. Plaintiff is informed and believes and thereon alleges that Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David violated Cal. Bus. & Prof. Code §§ 10176 (a) – (c), (i), §§ 10177(g), (j) and §§ 10232.6(b),(c).

83. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey reasonably relied on the appraisal Singh prepared for the Saralan Property, and the Borrowers' respective loan applications that Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David compiled, analyzed and presented to Downey, and consequently, Downey approved and funded the Borrowers' respective loans in reliance on the accuracy of the information the professionals provided to Downey.

84. Plaintiff is informed and believes and on thereon alleges that at all relevant times alleged herein Lamarsh Financial is vicariously liable for each of the acts and omissions committed by (i) Mate, S. De La Hoya, Wexelman, B. Lazar and David, who were licensed salespersons working for Lamarsh Financial at the time and whose licenses were placed with Lamarsh Financial; and (ii) for the acts of Z. Lamarsh, who was the qualifying broker for Lamarsh Financial and whose license was placed with Lamarsh Financial.

85. Plaintiff is further informed and believes and thereon alleges that at all relevant times alleged herein Z. Lamarsh, as the qualifying broker for Lamarsh

Financial, negligently failed to properly train and supervise the activities of Mate, S. De La Hoya, Wexelman, B. Lazar and David, and others who performed services related to the preparation of the Borrowers' respective loan applications and the appraisal for the Saralan Property, in violation of 10 C.C.R. § 2725.

86. The failure of Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and/or Singh to adhere to the statutory minimum standards of conduct was not excusable and constitutes negligence *per se*.

87. As a direct and proximate result of the breach of the Brokerage Agreement by Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and/or Singh, Plaintiff as Downey's Receiver has been damaged in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law.

## <u>COUNT FIVE</u>

**(BREACH OF FIDUCIARY DUTY—**

**As Against Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh)**

88. Plaintiff incorporates paragraphs 1 through 56 above as though fully set forth here at.

89. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David owed a fiduciary duty to Downey in connection with the submission of loan applications and appraisals. The fiduciary duties that said defendants owed Downey existed by virtue of the Brokerage Agreement and California statutes that require them to exercise their highest good faith and undivided

service and loyalty to Downey with respect to the loan applications and appraisal said DRE licensees obtained for Downey. Further, the fiduciary duties of Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David required them to exercise reasonable skill and care, for Downey's benefit, with respect to the loan applications and appraisal. As a licensed appraiser, Singh also owed a fiduciary duty to exercise reasonable skill and care, for Downey's benefit, with respect to the Saralan Appraisal.

90. Downey placed trust and confidence in the fidelity, good faith, and integrity of the actions of Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh and at all times, said defendants voluntarily accepted and assumed that special role of trust and confidence so as to establish a fiduciary relationship with Downey.

91. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey, as the lender to which Lamarsh Financial submitted the loan applications and appraisal herein described, had the right to rely upon the appraisal as being true, complete and accurate on the Saralan Loan that Lamarsh Financial, Z. Lamarsh, and David submitted to Downey.

92. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey had the right to rely upon the Borrowers' respective loan applications by virtue of the representations Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David made that the information contained therein was true, complete and accurate.

93. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David breached their fiduciary duties to Downey by: (i) failing to conduct a reasonable investigation into the financial information set forth in the Borrowers' respective loan applications, such that the information therein was not

true, correct, currently valid and genuine; (ii) supporting the Saralan Loan Application with an appraisal that did not comply with USPAP and other appraisal standards and requirements imposed by law; (iii) inducing Downey to loan money based upon inaccurate information; (iv) placing their own pecuniary interests above those of Downey; and (v) negligently or intentionally misrepresenting material facts or failing to disclose material facts in the Borrowers' respective loan applications.

94. Plaintiff is further informed and believes and thereon alleges that at all relevant times alleged herein Singh breached his fiduciary duties to Downey by failing to use reasonable care and due diligence in the preparation of the Saralan Appraisal.

95. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey did not beach any duty owed to Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and/or Singh.

96. As a direct and proximate result of Singh's breach of his fiduciary duty to Downey, Plaintiff as Downey's Receiver has been damaged in the amount of $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law. In addition, Plaintiff seeks recovery from Singh of all fees and profits he realized from the Saralan Appraisal, in an amount according to proof at time of trial and equal to all detriment proximately caused by their breach in order to place Plaintiff in the position it would have occupied had Singh performed his fiduciary duties to Downey, together with prejudgment interest on those additional liquidated damages at the maximum rate allowed by law.

97. As a direct and proximate result of Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David's respective breaches of fiduciary duty with respect to the Borrowers' respective loan applications, Plaintiff as Downey's Receiver has been damaged in the amount of the sum of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the

Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law. In addition, Plaintiff seeks recovery from Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David of all fees and profits they realized as a result of the Borrowers' respective loan applications, in an amount according to proof at time of trial and equal to all detriment proximately caused by their breach in order to place Plaintiff in the position it would have occupied had Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David performed their fiduciary duties to Downey, together with prejudgment interest on those additional damages at the maximum rate allowed by law.

98. As a direct and proximate result of Singh's breach of fiduciary duty with respect to the Saralan Appraisal, Plaintiff as Downey's Receiver has been damaged in the amount of the amount of $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law. In addition, Plaintiff seeks recovery from Singh of all fees and profits he realized from the Saralan Appraisal, in an amount according to proof at time of trial and equal to all detriment proximately caused by their breach in order to place Plaintiff in the position it would have occupied had Singh performed his fiduciary duties to Downey, together with prejudgment interest on those additional damages at the maximum rate allowed by law.

## COUNT SIX

### (NEGLIGENT MISREPRESENTATION – As Against Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh)

99. Plaintiff incorporates by this reference paragraphs 1 through 56 above as though set forth in full here at.

100. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David owed Downey a statutory, contractual and fiduciary duty of care in gathering, preparing and submitting to Downey the information that was stated in the loan applications for the Arenas Loan, A. De La Hoya Loan, Kimbell/Wells Loan, Lazar Loan, and Saralan Loan. Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David undertook those affirmative duties to insure the accuracy of the information they submitted to Downey and, in connection with those loan applications, they certified in writing that the information in the Borrowers' respective loan applications were true and correct.

101. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Singh owed Downey a statutory, contractual and fiduciary duty of care in gathering, preparing and submitting to Downey the appraisal on the Saralan Property and undertook those affirmative duties to insure the accuracy of the information submitted to Downey.

102. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh and David retained Singh for the purpose of preparing the Saralan Appraisal, which were intended for the benefit and use of Downey. Plaintiff is further informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh and David authorized, warranted and ratified the accuracy of said appraisal when they provided it to Downey in support of the Saralan Loan Application.

103. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein the information and other representations contained in the Borrowers' respective loan applications, and in the Saralan Appraisal, that Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David obtained and provided to Downey contained materially false, incorrect and misleading

information or, failed to disclose other information relevant to the Borrowers' respective loan applications. Due to said information being omitted, the Borrowers' respective loan applications were materially false, incorrect and misleading.

104. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David made to Downey the representations that are set forth in the Borrowers' respective loan applications, without having reasonable grounds for believing that the representations were true. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, David and Singh made to Downey the representations that are set forth in the Saralan Appraisal, without having reasonable grounds for believing that the representations were true.

105. Plaintiff is further informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh knew of material facts which they concealed or failed to disclose to Downey and which facts were not known by Downey at the time. Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh had a duty to disclose these suppressed facts because, without them, Downey was mislead into believing that the Borrowers were capable of repaying their respective loans and that the value of the collateral real property was sufficient to secure repayment for the Saralan Loan, in the event of default.

106. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey reasonably relied on the information set forth in the Borrowers' respective loan applications, and in the Saralan Appraisal, when Downey approved and funded the Borrowers' respective loans. Downey's reliance was reasonable because of the statutory, contractual and common law duties that were owed to it by Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B.

Lazar, David and Singh, and because of the civil and criminal penalties that could accrue if the information contained in the loan applications and appraisals was false or inaccurate.

107. Plaintiff is informed and believes and thereon alleges that as a direct and proximate result of the negligent misrepresentations and the negligent suppression of materials facts that Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and Singh made to Downey, that Plaintiff as Downey's Receiver has been damaged in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law.

**COUNT SEVEN**

**(FRAUD –**

**As Against Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and the Borrowers)**

108. Plaintiff incorporates by this reference paragraphs 1 through 56 above as though fully set forth here at.

109. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and the Borrowers together knowingly and willfully conspired to obtain the Borrowers' respective loans from Downey by making materially false statements concerning their income, assets and debts and in obtaining and submitting to Downey false and misleading appraisal on the Saralan Property.

110. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and the Borrowers made the material representations

contained in the Borrowers' respective loan applications to Downey knowing that the facts therein stated were false.

111. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and the Borrowers intended that Downey rely on the facts stated in the Borrowers' respective loan applications, and in the Saralan Appraisal.

112. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein Downey reasonably relied on the facts stated in the Borrowers' respective loan applications, and in the Saralan Appraisal, and that reliance lead to Downey approving and funding the Borrowers' respective loans, to Downey's resulting harm.

113. Plaintiff is informed and believes and thereon alleges that Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David played prominent roles in a conspiracy to have the Borrowers obtain loans from Downey by misstating their financial information.

114. Plaintiff is informed and believes and thereon alleges that Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David guided the operation of the conspiracy that caused the Borrowers' false and misleading loan applications to be submitted to Downey. Plaintiff is informed and believes and thereon alleges that Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David furthered the fraudulent scheme allegedly orchestrated to injure Downey by: (1) locating properties for the Borrowers to purchase; (2) executing documents to obtain the loans for the Borrowers from Downey; (3) not reviewing the loan applications of the Borrowers for accuracy prior to submitting the loan applications to Downey; (4) signing the loan applications submitted by the Borrowers; and (5) Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David acted as agents of one another in carrying out their fraudulent scheme

against Downey.

115. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein as a direct and proximate result of the acts and omissions of Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and the Borrowers, and each of them, Plaintiff as Downey's Receiver has been damaged in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law.

116. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein the acts and conduct of Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and the Borrowers, and each of them, were done with a conscious disregard of Downey's rights and with a specific intent to defraud and injure Downey, such as to constitute fraud, oppression, and malice. By virtue of the willful and wrongful conduct of Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David and the Borrowers, Plaintiff as Downey's Receiver is entitled to an additional award of punitive and exemplary damages in an amount according to proof at trial.

## COUNT EIGHT

**(UNJUST ENRICHMENT –**

**As Against Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David)**

117. Plaintiff incorporates by this reference paragraphs 109 through 115 hereinabove as though fully set forth here at.

118. Plaintiff is informed and believes and alleges thereon that Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David received

money, commissions, earnings and benefits as a result of submitting the fraudulent loan applications of the Borrowers to Downey.

119. Plaintiff is informed and believes and alleges thereon that Downey paid commissions and fees to Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David, in amount according to proof at trial.

120. As a direct and proximate result of the fraud committed by Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David, each of these defendants has been unjustly enriched, and has obtained money, commissions, earnings and benefits to which these defendants are not otherwise entitled, and which they would not have obtained had the true facts been known.

121. These defendants, and each of them, hold their respective portion of the money, commissions, earnings, benefits, and other gain that resulted from the Borrowers' loan applications in constructive trust for and on behalf of Plaintiff with a duty to pay over and return same to Plaintiff upon entry of judgment.

WHEREFORE, Plaintiff prays for judgment against the defendants, and each of them, as follows:

AS TO COUNT ONE

1. For damages in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or according to proof at trial and for prejudgment interest on Plaintiff's liquidated damages in the maximum amount allowed by law; and

2. For reasonable attorneys' fees and costs incurred in this action pursuant to the parties' contracts and according to proof at trial.

AS TO COUNT TWO

3. For damages in the amount of $288,000.00 on the Saralan Loan, or according to proof at trial and for prejudgment interest on Plaintiff's liquidated

damages in the maximum amount allowed by law.

AS TO COUNT THREE

4. For damages in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or according to proof at trial and for prejudgment interest on Plaintiff's liquidated damages in the maximum amount allowed by law.

AS TO COUNTS FOUR AND SIX

5. As against Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David, for damages in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or according to proof at trial and for prejudgment interest on Plaintiff's liquidated damages in the maximum amount allowed by law.

6. As against Singh, for damages in the amount of $288,000.00 on the Saralan Loan, or according to proof at trial and for prejudgment interest on Plaintiff's liquidated damages in the maximum amount allowed by law.

AS TO COUNT FIVE

7. As against Singh, for damages in the amount of $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law. In addition, Plaintiff seeks recovery from Singh of all fees and profits he realized from the Saralan Appraisal, in an amount according to proof at time of trial and equal to all detriment proximately caused by their breach in order to place Plaintiff in the position it would have occupied had Singh performed his fiduciary duties to Downey, together with prejudgment interest on those additional damages at the maximum rate allowed by law.

8. As against Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David with respect to the Borrowers' respective loan applications, for damages in the amount of the sum of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or in an amount according to proof at trial, together with prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed by law. In addition, Plaintiff seeks recovery from Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar, David of all fees and profits they realized as a result of the Borrowers' respective loan applications, in an amount according to proof at time of trial and equal to all detriment proximately caused by their breach in order to place Plaintiff in the position it would have occupied had Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David performed their fiduciary duties to Downey, together with prejudgment interest on those additional damages at the maximum rate allowed by law.

AS TO COUNT SEVEN

9. For damages in the amount of $224,000.00 on the Arenas Loan, $426,000.00 on the A. De La Hoya Loan, $301,000.00 on the Kimbell/Wells Loan, $239,000.00 on the Lazar Loan, and $288,000.00 on the Saralan Loan, or according to proof at trial and for prejudgment interest on Plaintiff's liquidated damages in the maximum amount allowed by law; and

10. For punitive damages in an amount according to proof at trial.

AS TO COUNT EIGHT

11. For all commissions, money and other gain received by Lamarsh Financial, Z. Lamarsh, Mate, S. De La Hoya, Wexelman, B. Lazar and David as a result of the subject loan transactions and for a court order that all such gain is held in constructive trust, for and on behalf of the Plaintiff.

AS TO ALL COUNTS

12. For such other relief as the Court deems just and proper.

DATED: June 15, 2010 **HERSHORIN & HENRY LLP**

By ______________________
JEAN C. WILCOX
Attorneys for Plaintiff,
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings & Loan Association, F.A.

# Exhibit 1

COMPLAINT
FDIC V. LARMARSH FINANCIAL

Broker I.D. Number LA0093

# WHOLESALE LOAN BROKERAGE AGREEMENT

Downey Savings and Loan Association, F.A. ("Downey Savings") and LAHARSH FINANCIAL, INC. ("Broker") enter into this Wholesale Loan Brokerage Agreement ("Agreement"). For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Downey Savings and Broker hereby agree as follows:

1. Loan Applications and Broker Submissions: Broker will submit to Downey Savings, at Broker's sole cost and expense, wholesale loan applications and completed loan packages for such wholesale loan programs as are from time to time made available by Downey Savings. All loan application packages submitted by Broker shall include all credit, financial, and other information as Downey Savings may require to underwrite loans. Broker shall keep confidential and not disclose or release to any third parties any information or documentation that Broker may obtain about Downey Savings, the prospective borrower, or the real property that is the subject of the loan application, except for disclosures that are reasonably necessary to carry out the purpose of this Agreement, or required by court order or law.

2. Appraisals: Broker acknowledges that each loan package submitted to Downey Savings must include an appraisal of the collateral for the proposed loan, which appraisal must (1) conform to all appraisal standards and requirements imposed by law, the Office of Thrift Supervision regulations and interagency guidelines, and such additional requirements as may be imposed by Downey Savings from time to time, and (2) be prepared by an appraiser who (a) has been engaged directly by Downey Savings or by Downey Savings' agent for such limited purpose and (b) has no direct or indirect interest in the proposed loan or the collateral. Broker shall not provide an appraiser with any information that may unduly influence the appraiser or in any way suggest the collateral's value.

3. Warranties and Representations: Broker represents and warrants to Downey Savings that: (a) all information submitted by Broker with regard to any loan applications submitted, including appraisals, all written materials and financial statements of loan applicants and signatures thereon, are true, correct, currently valid, and genuine, and that Broker has undertaken a reasonable investigation in making such determination; (b) Broker possesses all necessary permits and licenses as are required by any applicable regulatory authority to engage in the activities contemplated by this Agreement; (c) with regard to Broker's activities in general and the loan applications in particular, Broker will and has complied with all applicable laws and regulations, including Title V of the Gramm-Leach-Bliley Act and the interagency regulations thereunder regarding consumer financial privacy and the safeguarding of consumer financial information, the Federal Truth-In-Lending Act and Federal Reserve Board Regulation Z thereunder, the Federal Fair Credit Reporting Act, the Federal Equal Credit Opportunity Act and Regulation B thereunder, the Federal Real Estate Settlement Procedures Act and Regulation X thereunder, all applicable State and Federal Fair Lending and Fair Housing laws and regulations, all applicable predatory lending laws, and all other applicable local, state and federal laws; and (d) Broker is thoroughly familiar with each of Downey Savings' wholesale loan programs and, in connection with each loan application, has explained to the applicant the nature of the program and, in detail, the terms of the program and the manner in which the program works, and has obtained a written acknowledgment from the applicant that the applicant understands the nature and terms of the program and manner in which it works.

4. Rate Locks: Broker acknowledges that Downey Savings is not obligated to honor any rate lock requests submitted by Broker unless the rate lock requests are submitted in writing, are for the exact same terms and conditions under which the submitted loan was approved by Downey Savings and are otherwise consistent with Downey Savings daily rate sheet for the loan program requested. Broker further acknowledges that any request for a change in the terms of any loan approved by Downey Savings must be requested in writing and must be submitted for review and approval by Downey Savings' underwriting, before any rate lock request consistent with that change may be acted upon by Downey Savings. Broker shall not communicate to a loan applicant or rely upon any verbal loan authorization or approval, change in terms, or rate lock confirmation received unless the same is expressly set forth in a writing and signed by an authorized representative of Downey Savings.

EXHIBIT 1
Pg. 1 of 5

5. Prepayments and Refinances: If a loan application submitted by Broker and approved and funded by Downey Savings is subsequently prepaid in full or refinanced in full by the borrower

within one hundred eighty (180) days of the funding date of Downey Savings' loan closing (an "Early Prepayment"), Downey Savings shall notify Broker of such event and specify in the Early Prepayment notice the amount due Downey Savings, which shall be the total of all fees and commissions paid by Downey Savings to Broker in connection with the loan. Within ten (10) business days after Broker's receipt of an Early Prepayment notice from Downey Savings, Broker shall immediately refund to Downey Savings the amount specified in the Early Prepayment notice.

6. Broker Independent Contractor: Downey Savings and Broker acknowledge that Broker is an independent contractor. Broker is not, and shall not hold itself out as being, an agent, representative, or employee of Downey Savings, or endorsed by or affiliated with Downey Savings. Nothing in this Agreement shall be deemed or construed to create any employee relationship or agency relationship between Downey Savings and Broker. Broker shall not use Downey Savings' name or Downey Savings' descriptive loan product terms in any form of advertising.

7. Indemnification and Deposit: Broker shall indemnify Downey Savings, its parent entity, subsidiaries and affiliates, and the directors, officers and employees of each entity (collectively, "Indemnitees"), and hold Indemnities harmless from and against any loss, cost, claim, assertion, action or damage (including reasonable and necessary in-house and outside counsel attorney fees and related costs) arising out of or related to Broker's acts or omissions under this Agreement. Indemnitees shall have the right, in their sole and absolute discretion, to determine whether any amount so claimed shall be paid, compromised, defended, prosecuted or appealed. Indemnitees shall each have the right to select their own counsel and direct their own defense, and incur such expenses in handling a claim as Indemnitees each deems reasonable and necessary, including expenses for investigative, accounting and legal services.

8. Non-Exclusive Agreement: This Agreement is non-exclusive. Either party may enter into similar agreements with other persons or entities. Nothing in this Agreement shall be deemed or construed as creating any duty or obligation on the part of Downey Savings to accept any loan applications submitted by Broker, or to approve any loans requested, or to process any loan applications or other requests within any specific time frame. All loan applications and requests submitted to Downey Savings shall be handled in the normal course and scope of Downey Savings' business affairs, and shall be governed entirely by the requirements of Downey Savings. Downey Savings shall not be liable to Broker in any manner whatsoever for any delay in processing a loan application or any aspect thereof, or any failure or refusal to accept any loan application or to approve any loan applied for by borrower and submitted by Broker to Downey Savings.

9. Broker Fees and Commissions: Downey Savings shall have no obligation to pay Broker any fees, commissions or other consideration whatsoever in connection with any wholesale loan application submitted to Downey Savings unless and until the loan is approved and funded by Downey Savings, and closed, and Downey Savings' security instrument is recorded in the official records of the County in which the collateral is located. All of Downey Savings' fees and charges in connection with the loan, as specified in Downey Savings pricing schedules as amended from time to time, shall be deducted before paying any fees, commissions and other consideration to Broker. In the event any wholesale loan application submitted to Downey Savings by Broker is rejected, denied, cancelled, turned down, or is otherwise not funded and recorded for any reason whatsoever, including because the same borrower obtained a loan through retail channels, Downey Savings shall have no duty or obligation to pay Broker any commission, fee or other compensation whatsoever in connection with that loan application, irrespective of whether the borrower later reapplies for and obtains a loan from Downey Savings directly or through another broker; and if Broker receives any commission, fee or other compensation from Downey Savings, Broker shall return the same to Downey Savings within ten (10) days of Downey Savings' request therefor. Nothing herein shall be deemed or construed to require Downey Savings to pay Broker any fees, commissions or other consideration whatsoever in connection with any retail loan funded by Downey Savings. In addition, if Downey Savings is required by law to reimburse and does reimburse any loan applicant for any fees, costs or other charges because the loan applicant has timely and properly exercised a right to cancel the loan transaction, then Broker shall, promptly after demand, reimburse Downey Savings for all payments which Downey Savings makes to the loan applicant. Upon learning of a timely and proper cancellation, Broker shall immediately advise Downey Savings if an appraisal and/or credit report obtained in connection with the cancelled transaction was used to obtain a loan elsewhere.

EXHIBIT 1
Pg. 2 of 5

Pg. 37

10. Permission/Unsolicited Advertising Facsimiles. Downey Savings, and it parent entity, subsidiaries and affiliates, are hereby granted permission to transmit to Broker, via facsimile, any

unsolicited advertisement, as that term is defined in section 17538.43 of the California *Business and Professions Code*. The permission granted shall be for an unlimited number of advertisements for an unlimited period of time, and, unless withdrawn, shall survive the termination of this Agreement Should Broker desire to withdraw the permission granted hereby, such withdrawal shall be made by written notice from Broker to Downey Savings pursuant to the notice provision set forth herein.

11. Termination of Agreement; Notice: This Agreement may be terminated by either party at any time, upon written notice thereof to the other. However, such termination shall not relieve either Downey Savings or Broker from any obligations arising under this Agreement prior to termination Broker may not assign or delegate any of its rights or obligations under this Agreement to any other person or entity without Downey Savings' prior written consent, which consent may be granted or withheld in Downey Savings' sole and absolute discretion. Any notice required to be given under this Agreement shall be in writing and delivered either personally or via fax with a copy sent via U S. mail with first-class postage wholly prepaid, to the addresses and fax numbers set forth below.

12. Mortgage Industry Data Exchange:

12.1 Broker grants Downey Savings permission to submit the name of Broker, any related companies of Broker and all employees of Broker and such companies to the Mortgage Industry Data Exchange ("MIDEX") operated by Mortgage Asset Research Institute, Inc. ("MARI"), for the purpose of screening any and all mortgage industry background databases which may contain background information about Broker, Broker's related companies and employees.

12.2 Broker acknowledges that Downey Savings may perform quality control reviews of the loan applications and packages that Broker submits to Downey Savings for registration, review and/or underwriting. Broker hereby consents to third parties releasing of relevant information to Downey Savings concerning any loan application that is believed to contain misrepresentations and/or irregularities. Broker also acknowledges that Broker and its employees may be named as the originating entity or loan officers on such loans, whether or not Broker or its employees are implicated in the misrepresentations and/or irregularities.

12.3 Broker shall indemnify Indemnitees, MARI, all MIDEX subscribers, and any trade associations that endorse the MIDEX system (individually and collectively, "Indemnified Parties"), and hold Indemnified Parties harmless from any loss, claim, assertion, action or damage (including reasonable and necessary in-house and outside counsel attorney fees and related costs) arising out of or relating to the reporting or use of any information submitted by Downey Savings or any other MIDEX subscriber to MARI, recorded in the MIDEX system, and used in any way by Downey Savings or any other MIDEX subscriber. Indemnified Parties shall have the right, in their sole and absolute discretion, to determine whether any amount so claimed shall be paid, compromised, defended, prosecuted or appealed. Indemnified Parties shall each have the right to select their own counsel and direct their own defense, and incur such expenses in handling a claim as Indemnified Parties each deems reasonable and necessary, including expenses for investigative, accounting and legal services.

13. Miscellaneous:

13.1 Reliance on Broker's Warranties and Representations. Broker acknowledges that Downey Savings will be relying upon all of the documents and information provided by Broker in connection with any loan application submitted by Broker to Downey Savings.

13.2 Contact with Borrower: Broker acknowledges that Downey Savings may contact the borrower, the borrower's employer, real estate agent, or anyone else involved with the particular loan file any time after the loan application is received by Downey Savings.

13.3 Prompt Notice of Broker's Receipt of Right to Cancel: Upon receipt of a loan cancellation notice from an applicant, Broker shall immediately forward the notice to the attention of Downey Savings' Legal Department, via facsimile (949-725-0619).

13.4 Entire Agreement. This Agreement contains the entire understanding and agreement between Downey Savings and Broker, and supersedes all prior or contemporaneous agreements, representations, negotiations or understandings, whether written or oral, between them

EXHIBIT 1
Pg. 3 of 5

Pg. 38

Broker I.D. Number: ___________

13.5 Governing Law; Attorney Fees; Venue; Jurisdiction; Waiver of Jury Trial. This Agreement shall be governed by, construed, interpreted and applied in accordance with the laws of the State of California, without giving effect to any conflict of laws rules that would refer the matters to the laws of another jurisdiction. The prevailing party in any action or proceeding, including arbitration, relating to this Agreement shall be entitled to recover reasonable attorney fees (including in-house and retained counsel fees) and other costs from the non-prevailing parties, in addition to any other relief to which such prevailing party may be entitled. Any action to interpret or enforce this Agreement must be brought in a court of competent jurisdiction within Orange County, California. Downey Savings and Broker waive their right to a jury trial.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the last date written below.

**DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.** Dated: ___________

By: ___________________________
Its: ___________________________
Wholesale Loan Production [113]

Address: 3501 Jamboree Road
P.O. Box 6000
Newport Beach, CA 92658
Fax No. (949) _________

**BROKER**: LAMARSH FINANCIAL, INC. Dated: Dec. 15, 2005
(Company Name)

By: [signature]
Print Name: ZENY P. LAMARSH
Its: BROKER

3340 TULLY RD. STE C-3
(Street Address)
MODESTO, CA 95350
(City, State and Zip Code)

Phone No.: 209-968-6590

Fax No.: 209-572-2104

LA0093
LA0097
LA0096
LA0091

EXHIBIT 1
Pg. 4 of 5

Pg. 39

**ADDENDUM TO**
**MORTGAGE LOAN BROKERAGE AGREEMENT**

THIS ADDENDUM is made as of Dec. 15, 2005 ("Effective Date") with reference to that certain Mortgage Loan Brokerage Agreement entered into by and between Downey Savings and Loan Association, F.A. ("Downey Savings") and the undersigned ("Broker") (the "Agreement"), and is attached thereto and incorporated therein.

Permission/Unsolicited Advertising Facsimiles.

Downey Savings, and its parent entity, subsidiaries and affiliates, are hereby granted permission to transmit to Broker, via facsimile, any unsolicited advertisement, as that term is defined in section 17538.43 of the California *Business and Professions Code*. The permission granted shall be for an unlimited number of advertisements for an unlimited period of time, and, unless withdrawn, shall survive the termination of the Agreement. Should Broker desire to withdraw the permission granted hereby, such withdrawal shall be made by written notice from Broker to Downey Savings pursuant to the notice provision set forth in the Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Addendum as of the Effective Date.

LAMARSH FINANCIAL, INC.
(print name of entity)

By: [signature]
(signature)

ZENY P. LAMARSH
(print name)

BROKER/OWNER
(title)

EXHIBIT 1
Pg. 5 of 5

# Exhibit 2

**COMPLAINT**
**FDIC V. LARMARSH FINANCIAL**

# Uniform Residential Appraisal Report

5SARALAN
File # SARALAN

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

EXHIBIT 2
Pg. 1 of 2



Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

5SARALAN
File # SARALAN

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature [signature]
Name RESHAM SINGH
Company Name NEWBURN, SINGH & ASSOCIATES, INC.
Company Address 102 HACKBERRY AVE
MODESTO, CA 95354
Telephone Number 209 5235414 205
Email Address reshamsingh@sbcglobal.net
Date of Signature and Report 01/17/2006
Effective Date of Appraisal 01/12/2006
State Certification #
or State License # AL028817
or Other (describe) State #
State CA
Expiration Date of Certification or License 6/24/2006

ADDRESS OF PROPERTY APPRAISED
2726 DONNER TRAIL
RIVERBANK, CA 95367

APPRAISED VALUE OF SUBJECT PROPERTY $ 495,000

LENDER/CLIENT
Name
Company Name LAMARSH - LAMARSH FINANCIAL
Company Address 3340 TULLY RD , STE C-3, MODESTO, CA, 95350
Email Address

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature
Name
Company Name
Company Address

Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection
☐ Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

EXHIBIT 2
Pg. 2 of 2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

**SACV10-872 DOC (RNBx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[X] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Jean C. Wilcox, Esq. (SBN 97963)
HERSHORIN & HENRY, LLP
27422 Portola Parkway, Suite 360
Foothill Ranch, CA 92610
(949) 859-5600

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings and Loan Association, F.A. PLAINTIFF(S) | CASE NUMBER **SACV10-00872 DOC (RNBX)** |
| v. | |
| LAMARSH FINANCIAL INC., a Nevada corporation (SEE ATTACHED LIST) DEFENDANT(S). | **SUMMONS** |

TO: DEFENDANT(S): ______________________________

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, HERSHORIN & HENRY, LLP, whose address is 27422 Portola Parkway, Suite 360, Foothill Ranch, CA 92610. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUN 15 2010

By: [signature] Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

SUMMONS- Attachment

Defendants:

LAMARSH FINANCIAL INC., a Nevada corporation; ZENY P. LAMARSH, an individual; SAM DAVID, an individual; STEVEN DE LA HOYA, an individual; BENIS LAZAR, an individual; LINDA MATE, an individual; ERIC WEXELMAN, an individual; BRISA ARENAS, an individual; ANTONIO DE LA HOYA, an individual; BRITTEN KIMBELL, an individual, CHRIS WELLS, an individual, YACOU LAZAR, an individual; RASHEL SARALAN, an individual, and RESHEM SINGH, an individual;

Name & Address:
Jean C. Wilcox, Esq. (SBN 97963)
HERSHORIN & HENRY, LLP
27422 Portola Parkway, Suite 360
Foothill Ranch, CA 92610
(949) 859-5600

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings and Loan Association, F.A.<br>PLAINTIFF(S)<br>v.<br>LAMARSH FINANCIAL INC., a Nevada corporation (SEE ATTACHED LIST)<br>DEFENDANT(S). | CASE NUMBER<br>**SACV10-00872 DOC (RNBX)**<br><br>**SUMMONS** |

TO: DEFENDANT(S): ______________________________

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, HERSHORIN & HENRY, LLP, whose address is 27422 Portola Parkway, Suite 360, Foothill Ranch, CA 92610. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUN 15 2010

By: RAMONA LA CHAPELLE
Deputy Clerk

SEAL

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

SUMMONS- Attachment

Defendants:

LAMARSH FINANCIAL INC., a Nevada corporation; ZENY P. LAMARSH, an individual; SAM DAVID, an individual; STEVEN DE LA HOYA, an individual; BENIS LAZAR, an individual; LINDA MATE, an individual; ERIC WEXELMAN, an individual; BRISA ARENAS, an individual; ANTONIO DE LA HOYA, an individual; BRITTEN KIMBELL, an individual, CHRIS WELLS, an individual, YACOU LAZAR, an individual; RASHEL SARALAN, an individual, and RESHEM SINGH, an individual;

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings and Loan Association, F.A.

**DEFENDANTS**
SEE ATTACHED LIST

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
HERSHORIN & HENRY, LLP
27422 Portola Pkwy., #360, Foothill Ranch, CA 92610
(949) 859-5600

Attorneys (If Known)
Not Known

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No

☑ **MONEY DEMANDED IN COMPLAINT: $** 1,478,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
12 USC 1819(a), 12 USC 1819(b)(2)(A) and USC 1345- FDIC is an agency of the United States with power to sue and U.S. District Court has original Jusrisdiction

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☑ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury- Med Malpractice
☐ 365 Personal Injury- Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: SACV10-00872 DOC (RNBX)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Joaquin, Stanislaus, Alameda, Santa Clara, Contra Costa, Yuba |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 06.15.2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# CIVIL CASE COVER SHEET- Continuation

Defendants:

LAMARSH FINANCIAL INC.

LAMARSH, ZENY P.

DAVID, SAM

DE LA HOYA, STEVEN

LAZAR, BENIS

MATE, LINDA

WEXELMAN, ERIC

ARENAS, BRISA

DE LA HOYA, ANTONIO

KIMBELL, BRITTEN

WELLS, CHRIS

LAZAR, YACOU

SARALAN, RASHEL

SINGH, RESHEM